UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 13-CV-4285 (JFB)(SIL)

DISTRICT PHOTO INC. HEALTH CARE PLAN,

Plaintiff,

VERSUS

DIMITRI PYRROS, M.D. AND ZELEN PYRROS, M.D., P.C.,

Defendants.

**MEMORANDUM AND ORDER**
September 28, 2016

JOSEPH F. BIANCO, District Judge:

On December 2, 2015, the Court denied both parties' respective motions for summary judgment in an oral ruling (the "Ruling"). By motion filed February 11, 2016, defendants Dr. Dimitri Pyrros ("Dr. Pyrros"), a thoracic surgeon, and his practice, Zelen Pyrros, M.D., P.C. ("Zelen Pyrros") (collectively, "defendants"), request that the Court re-consider the December 2, 2015 Ruling. Specifically, defendants argue that the Supreme Court's recent decision in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651 (2016) abrogated the Second Circuit's decision in *Thurber v. Aetna Life Insurance Company*, 712 F.3d 654 (2d Cir. 2013), which this Court relied upon in reaching its conclusions in the Ruling.

For the reasons set forth below, the Court grants defendants' motion for reconsideration.

I.  BACKGROUND

The Court assumes the parties' familiarity with the facts of this case, which were set forth more fully on the record in the Court's December 2, 2015 Ruling. (ECF No. 33.) The Court reserves recitation of the relevant facts for the discussion below.

On July 30, 2013, plaintiff District Photo Inc. Health Care Plan ("the Plan" or "plaintiff"), brought this action, naming Dr. Pyrros and Zelen Pyrros as defendants, pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), seeking restitution of overpaid benefits in the amount of $140,400.00, and alleging breach of contract under N.Y. ISC. Law § 3224 and unjust enrichment. In their October 18, 2013 Answer, defendants asserted a counterclaim seeking to recover additional funds not paid under settlement agreements with plaintiff.

On July 9, 2014, both plaintiff and

defendants filed their respective motions for summary judgment. On December 2, 2015, the Court granted defendants' motion for summary judgment to the extent plaintiff sought to bring state law claims and denied the cross-motions in all other respects. Defendants requested an extension of time to file a motion for reconsideration on December 18, 2016, and a subsequent extension of time to file a motion for reconsideration on January 11, 2016, both of which the Court granted. On February 11, 2016, defendants filed a motion for reconsideration of the Ruling. Plaintiff submitted an opposition on March 9, 2016, which it replaced with a corrected document on March 10, 2016. Defendants filed their reply on March 11, 2016. The Court held oral argument on the motion on September 6, 2016.

The matter is fully submitted, and the Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

Motions for reconsideration of a non-final judgment may be filed pursuant to Federal Rules of Civil Procedure 59(e).[1] The standard for granting a motion for reconsideration pursuant to Rule 59(e) is "strict, and reconsideration will generally be denied." *Herschaft v. N.Y. City Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal quotation marks and citation omitted). A motion for reconsideration is appropriate when the moving party can demonstrate that the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Id.* at 283-84 (internal quotation marks and citation omitted). "Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice." *Id.* at 284 (internal quotation marks and citation omitted).

Local Civil Rule 6.3 provides that a party moving for reconsideration must "set[] forth concisely the matters or controlling decisions which [the party] believes the court has overlooked." *Id.* "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Black v. Diamond*, 163 F. App'x 58, 61 (2d Cir. 2006) ("To merit reconsideration, a movant must point to law or facts overlooked by the court in its initial ruling. . . ."); *Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 97-cv-6612 (SJ), 2006 WL 355137, at *1 (E.D.N.Y. Feb. 15, 2006) ("The standard . . . is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.").

## III. DISCUSSION

Defendants' motion for reconsideration is based upon the Supreme Court's recent decision in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651 (2016). Because *Montanile* abrogated the Second Circuit's decision in *Thurber v. Aetna Life Insurance Company*, 712 F.3d 654 (2d Cir. 2013), which this Court relied upon in reaching its conclusions in the Ruling, the Court grants

---

[1] The standard regarding motions for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure, by which parties may seek relief from final judgments, *see House v. Sec'y of Health & Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982), is not relevant for the purposes of this motion.

defendants' motion for reconsideration.

A. Abrogation of *Thurber*

ERISA authorizes plan participants, beneficiaries, or fiduciaries to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added).

In denying the cross-motions for summary judgment, this Court relied upon the Second Circuit's decision in *Thurber*. (*See* ECF No. 33, at 8 ("I believe that the 2nd Circuit case of Thurber is controlling and instructive on this issue.").) In *Thurber*, the Second Circuit held that a claim seeking the return of overpaid benefits constituted an action for "appropriate equitable relief" under Section 1132(a)(3). 712 F.3d at 661. The Second Circuit further held that whether the funds had been segregated and even dissipated had no bearing on whether there was an equitable claim under ERISA. *Id.* at 663-64.

However, in *Montanile*, the Supreme Court held that a plaintiff can "enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds. . . . A defendant's expenditure of the entire identifiable fund on nontraceable items . . . destroys equitable lien. The plaintiff then may have a personal claim against the defendant's general assets—but recovering out of those assets is a *legal* remedy, not an equitable one." 136 S. Ct. at 658.[1] Accordingly, *Montanile* clearly abrogated *Thurber*, and, thus, alters the Court's analysis in its prior Ruling.

B. Plaintiff Does Not Have a Claim for Equitable Relief

As discussed *supra*, Section 502(a)(3) of ERISA provides that a fiduciary can bring suit to obtain "appropriate equitable relief" to redress violations of ERISA, or enforce provisions of ERISA or terms of the applicable plan. 29 U.S.C. § 1132(a)(3); *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006). Thus, plaintiff must establish that the relief sought is equitable in order to recover under Section 502(a)(3)(B). *See Sereboff*, 547 U.S. at 361. The Supreme Court has made clear that "equitable relief" is intended to include "only 'those categories of relief that were *typically* available in equity,'" *id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)), as opposed to "all relief falling under the rubric of restitution." *Id.* (quoting *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)) (internal quotation marks omitted).

1. Funds Are Not Traceable

Defendants first argue that plaintiff does not have equitable relief because the funds are not traceable. The Court agrees.

As discussed *supra*, in *Montanile*, the Supreme Court held that a plaintiff can "enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds. . . . A defendant's expenditure of the entire identifiable fund on nontraceable items . . . destroys an equitable lien." 136 S. Ct. at 658; *see also Knudson*,

---

[1] The Supreme Court noted that it "granted certiorari to resolve a conflict among the Court of Appeals over whether an ERISA fiduciary can enforce an equitable lien against a defendant's general assets" and listed *Thurber* as one of the Circuit cases causing the Circuit split. 136 S. Ct. at 656 & n.2.

3

534 U.S. at 213-14 ("[A] plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. . . . Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession").

Here, it is uncontroverted that Zelen Pyross did not segregate the funds paid by plaintiff. Instead, Dr. Jonathan Zelen ("Dr. Zelen"), the principal of Zelen Pyross, submitted a declaration in connection with the defendants' motion for summary judgment, in which he indicated that he supervised all business aspects of Zelen Pyrros and processed all funds received since December 1, 2011. (Zelen July 9, 2014 Decl. ¶ 1.) Dr. Zelen declared that Zelen Pyros received $307,000 from plaintiff for the surgery at issue, and that the funds "went into general funds and were not segregated." (*Id.* ¶ 9.) Thus, because no evidence has been brought forth to demonstrate that the funds are traceable, plaintiff cannot seek equitable relief based upon the tracing method. *See, e.g.*, *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 155 (2d Cir. 2014) ("The relief sought by Central States is not equitable because it does not assert title or right to possession of particular property, but simply asserts a claim against Gerber's general assets. For this reason, Central States cannot 'trac[e]' the money it claims to 'particular funds or property in [Gerber's] possession. . . .'" (quoting *Knudson*, 534 U.S. at 213)); *see also Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, No. 4:13-CV-3291, 2016 WL 3077405, at *11 (S.D. Tex. June 1, 2016) ("Cigna is not entitled to equitable restitution of any alleged overpayments based on the 'tracing' method, as it cannot identify any specific *res* separate and apart from Humble's general assets.").[2]

### 2. The Plan Document Does Not Impose an Equitable Lien

Defendants further argue that the language of the operative document, plaintiff's Plan Document and Summary Plan Description, effective November 1, 2010 (the "Plan Document"), does not create an equitable trust for payments to the Plan's beneficiaries or providers. The Court agrees.

The Plan Document's Rights of Recovery section provides that:

> Whenever payments have been made by the Claims Administrator with respect to allowable expenses in excess of the maximum amount of payment necessary to satisfy the intent of this Plan, the Claims Administrator shall have the right to recover such excess payments. If a covered Employee is paid a benefit greater than that allowed by the Plan, the covered Employee will be requested to refund the overpayment. If the refund is not received from the covered Employee, the amount of overpayment will be deducted from future benefits. Similarly, if payment

---

[2] Defendants also argue that the relief sought is not equitable because the funds have been dissipated. The Court notes that Dr. Zelen filed a subsequent declaration in connection with the motion for reconsideration, in which he declared that Zelen Pyross "closed its doors and terminated its operations" as of December 31, 2015, and "currently has less than $20,000 of debt, less than $6,500 in cash (which will be used to pay the debt in the immediate future) and no other assets of any value." (Zelen Feb. 11, 2016 Decl. ¶ 3.) Plaintiff did not contest this evidence.

4

is made on behalf of a covered Employee to a hospital, Physician, or other provider of health care, and that payment is found to be an overpayment, the Plan will request a refund of the overpayment from the provider.

(Plan Document and Summary Plan Description, Ex. 1 to Fishman Aff., ECF No. 19-2, at 59-60.)[3] Thus, this section clearly provides two options when excess payments have been made: (1) the administrator can request a refund, or (2) the administrator can deduct the overpayment from future benefits. Absent from the Rights of Recovery section is any indication that an equitable lien is created if overpayment occurs. *See, e.g.*, *Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 771 F.3d at 157 ("There is no equitable lien by agreement because there is no agreement between Central States and Gerber that 'specifically identified a particular fund, distinct from [Gerber's] general assets' nor 'a particular share of that fund to which [Central States] was entitled.'" (quoting *Sereboff*, 547 U.S. at 364)).

In contrast, other portions of the Plan Document demonstrate that plaintiff knew how to draft the document in order to create an equitable lien. Specifically, the "Subrogation/Reimbursement" section provides that when the Plan has paid for a beneficiary's medical expenses following an accident and the beneficiary then recovers in a lawsuit, "[a]ll funds received by or for any covered person, up to and including the amount of claims paid, are subject to the Plan's equitable lien thereon and *are deemed to be held in constructive trust* for the benefit of the Plan until such funds are delivered to the Plan or its attorneys." (Plan Document and Summary Plan Description at 59 (emphasis added).) Thus, an equitable lien is clearly created by the "Subrogation/Reimbursement" section.

In contrast, the Rights of Recovery section includes no such language regarding an equitable lien or constructive trust. Thus, the average plan participant would clearly not understand that the Plan Document implicitly imposed a lien if providers were overpaid. *See, e.g.*, *Humble Surgical Hosp., LLC*, 2016 WL 3077405, at *10 (distinguishing between "Recovery of Overpayment" section, which did not include language regarding liens, and "Subrogation/Right of Reimbursement" section, which specifically provided for the creation of a lien, and noting that the plaintiff failed to establish that the "Recovery of Overpayment" provision contained in its plan documents created a constructive trust or equitable lien by agreement); *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. CIV.A. DKC 14-2376, 2015 WL 4394408, at *9-10 (D. Md. July 15, 2015) (distinguishing between language in "Subrogation/Right of Reimbursement" section, which specifically created a lien on particular funds, and "Overpayment Provision," which did not include such language, and noting that "[t]he language used in the Overpayment Provision cannot be understood by a plan member—or a provider that is not a party to the plan—as asserting an equitable lien or constructive trust on plan overpayments to providers"); *see also* 29 U.S.C. § 1022(a) (providing that a summary plan description "shall be written in a manner calculated to be understood by

---

[3] The Court notes that plaintiff cited to different "Recovery of Payments" language in its opposition. (*See* Pl.'s Opp'n at 5.) In their reply, defendants argued that such language was inapplicable because it was found in a later version of the Plan Document, which was in effect after the events at issue occurred. At oral argument, counsel for plaintiff conceded that the language quoted in the opposition brief was from a later version of the Plan Document, and thus, not the operative document in this case.

5

the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.").

Because "ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets," *Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 771 F.3d at 157 (quoting *Cent. States, Se. & Sw. Areas Health and Welfare Fund v. Health Special Risk, Inc.*, 756 F.3d 356, 365 (5th Cir. 2014)) (internal quotation marks omitted), and there was no agreement providing that excess payments would be subject to an equitable lien, plaintiffs do not have a claim for equitable relief under ERISA. Thus, because plaintiffs seek only legal relief, which is not available under Section 502(a)(3), defendants are entitled to summary judgment. *See, e.g.*, *id.* (noting claims seeking compensation from defendant's general assets, in the absence of an agreement that specifically identified a particular fund, sought "legal relief that is not available under § 502(a)(3)"); *Knudson*, 534 U.S. at 221 ("[Section] 502(a)(3), by its terms, only allows for *equitable* relief. . . . Because petitioners are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money—§ 502(a)(3) does not authorize this action."); *Montanile*, 136 S. Ct. at 661 ("[L]egal remedies—even legal remedies that a court of equity could sometimes award—are not 'equitable relief' under § 502(a)(3).").

C. Settlement Letters

Defendants also move for reconsideration of the Court's determination that the settlement agreements between the parties (the "Settlement Letters") were expressly preempted. To the extent that the Court previously concluded that the Settlement Letters were preempted by ERISA because of the existence of an overpayment claim under Section 502(a)(3), that has been overruled by *Montanile*, as discussed *supra*. In any event, to the extent that the Court concluded that ERISA would trump the Settlement Agreements if the alleged overpayment clearly violated the Plan Document, defendants have submitted additional Plan Document language which makes clear that the payments did not violate the Plan Document.

Although the parties dispute whether Dr. Pyrros should have been paid the primary surgeon or assistant surgeon rate, defendants argue that even assuming he should be billed as an assistant surgeon, the amount plaintiff agreed to pay Zelen Pyrros and the amount Zelen Pyrros was actually paid by plaintiff do not violate the terms of the Plan Document due to the rates set out in the Plan Document's Medical Benefits section.

The Plan Document's Medical Benefits section sets forth a schedule that details the payments that will be paid to out-of-network providers for various medical procedures. (Plan Document and Summary Plan Description at 19.) With respect to surgery, the schedule provides that "surgery, inpatient," "surgical assistant – inpatient or outpatient," "surgery, outpatient hospital," and "surgery, physician's office" will all be reimbursed at a rate of 90% for in-network surgeries and 75% subject to deductible for out-of-network surgeries. (*Id.* at 21.) Further, the notes to the schedule provide that "Emergency Care . . . rendered for an emergency will be payable at the In-Network level of benefits if choice of hospital and ambulance was beyond the control of the Participant." (*Id.* at 24.) Because Dr. Pyrros and Dr. Webb, performed emergency thoracic surgery on a

patient who was a participant in the Plan, (Pl.'s 56.1 ¶ 8; Defs.' 56.1 ¶ 1), defendants were entitled to reimbursement at a rate of 90% of the Allowed Benefit for their services.[4,5] Zelen Pyrros billed a total of $405,000 for the surgery performed by Dr. Pyrros and Dr. Webb (Zelen July 9, 2014 Decl. ¶ 9), and thus, according to the schedule, would be entitled to 90% of that rate, or $364,500. Thus, agreeing to pay Zelen Pyrros $325,500 for its services was not a clear violation of the Plan Document.

Defendants further argue that the Plan Administrator has complete discretion in setting the Allowed Benefit, which it exercised in agreeing to pay the amounts set forth in the Settlement Letters. The plain language of the Plan Document clearly supports defendants' position.

The Plan Document specifically provides that "[t]he Plan Administrator has the sole and absolute discretion to construe and interpret the provisions and terms of the plan, to resolve any disputes which may arise under the plan and otherwise determine the operation and administration of the plan. . . . Any and all such decisions and determinations made by the Plan shall be final and binding upon all parties." (Plan Document and Summary Plan Description at 61.) Here, the Plan's claims administrator, NCAS, commissioned HRGi to negotiate the claims with defendants, and, after negotiating with HRGi, Zelen Pyrros agreed to accept $325,500 for its services, which was memorialized in the Settlement Letters. (Defs.' 56.1 ¶¶ 6-11.) Thus, because by the express terms of the Plan Document, the administrator had the sole and absolute discretion to resolve the dispute with Zelen Pyrros, the alleged overpayment does not violate the Plan Document. Further, because the "decisions and determinations made by the Plan [are] final and binding upon all parties," plaintiff failed to abide by those terms by failing to pay defendants the entire amount owed under the Settlement Letters. In particular, although the Settlement Letters provide for a total payment of $325,500, the Plan only paid Zelen Pyrros $307,533.74. (*See* Ex. 5 to Fletcher Tr., ECF No. 19-3 at 111-15.) Thus, Zelen Pyrros is owed an additional $17,966.26 from plaintiff under the Letter Agreements.

Therefore, because the Settlement Agreements did not clearly violate the Plan Document and the Plan Administrator had the sole discretion to negotiate the claims with defendants, there is no clear reason for the Court not to enforce the Settlement Letters. Thus, the Court concludes that summary judgment should be granted to defendants on their counterclaim[6] and they

---

[4] "Allowed Benefit" is defined as "[p]lan allowances for treatment, services or supplies, rendered by an Out-of-Network provider, essential to the care of the individual as determined by the Claims Administrator. Charges by a Licensed Provider must be the amount usually charged for similar services and supplies in the absence of a Plan or insurance. Charges for Covered Services that do not exceed the Allowed Benefit will be reimbursed as specified in the Schedule of Benefits. A fee schedule, approved by NCAS, may be used by the Plan in determining the amount of the Allowed Benefit." (Plan Document and Summary Plan Description at 47.)

[5] When asked at oral argument, whether she had a response to defendants' argument regarding this language of the Plan Document, plaintiff's counsel told the Court that she "didn't have a response to that." The Court also offered plaintiff's counsel the opportunity to brief the issue since she did not address it in plaintiff's opposition papers, but she declined and again indicated that she "had no response."

[6] The Court further notes that the Settlement Letters are not preempted by ERISA. As an initial matter, plaintiff did not plead express preemption as a defense to the counterclaim and has accordingly waived such an argument. *See, e.g.*, *Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 466 (S.D.N.Y. 2013) ("ERISA preemption is an affirmative defense, and as such, is waived if not pleaded in a defendant's

should be awarded $17,966.26, the amount owed under the Settlement Letters.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for reconsideration. Defendants' motion for summary judgment on plaintiff's claims is granted, and plaintiff's complaint is dismissed. Additionally, defendants' motion for judgment on their counterclaim is granted in the amount of $17,966.26. The Court will schedule a telephone conference to discuss defendants' request for attorneys' fees.[7]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 28, 2016
   Central Islip, NY

\*\*\*

Plaintiff is represented by Gloria B. Cherry of Braff Harris & Sukoneck, 305 Broadway, New York, NY 07039. Defendants Dr. Pyrros and Zelen Pyrros are represented by Mark I. Fishman and Simon I. Allentuch of Neubert, Pepe & Monteith, P.C., 195 Church Street, 13th Floor, New Haven, CT 06510.

---

answer."); *see also Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) ("ERISA preemption of state contract claims in a benefits-due action is an affirmative defense that is untimely, and therefore subject to waiver, if not pleaded in the defendant's answer."). Further, because the Settlement Letters clearly provide that a specific amount must be paid for the services rendered by defendants, there is no need to refer to the Plan Document in order to interpret these documents, and thus, no preemption. *Cf. In re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1268 (S.D. Fla. 2001) ("In this case, the Provider Plaintiffs assert that they seek to enforce the terms and conditions of their own contracts with the Defendants, rather than assignments from ERISA beneficiaries. . . . The Plaintiffs allege that the Defendants engaged in bundling and downcoding, actions which might sustain a breach of contract claim without a need for reference to the interpretation of ERISA plans. The Plaintiffs' state law contract claims therefore do not 'relate to' the ERISA plans, and are not preempted by the Act."); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2011 WL 1626546, at \*4 (N.D. Ill. Apr. 28, 2011) (finding coinsurance claims were not preempted because "the claims do not require construction of the terms of ERISA plans. Instead, the claims arise from a provider agreement and do not rely on a direct and unequivocal nexus with any ERISA plans").

[7] Although in their original summary judgment papers, defendants argued that they are entitled to reasonable attorneys' fees, the Court would require supplemental briefing to resolve this issue. In particular, defendants have failed to articulate how plaintiff's claims lacked a basis in law or fact when *Montanile* was decided after the filing of the lawsuit and the summary judgment papers, and this Court initially concluded that *Thurber* supported plaintiff's claim. If defendants intend to pursue an attorneys' fees motion, they would need to put in a motion in which they fully brief the standard as well as submit an affidavit with respect to the fees themselves.