UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 13-CV-4285 (JFB)(SIL)

DISTRICT PHOTO INC. HEALTH CARE PLAN,

Plaintiff,

VERSUS

DIMITRI PYRROS, M.D. AND ZELEN PYRROS, M.D., P.C.,

Defendants.

**MEMORANDUM AND ORDER**
May 30, 2017

JOSEPH F. BIANCO, District Judge:

On December 2, 2015, the Court denied both parties' respective motions for summary judgment in an oral ruling (the "Oral Ruling"). By motion filed February 11, 2016, defendants Dr. Dimitri Pyrros ("Dr. Pyrros"), a thoracic surgeon, and his practice, Zelen Pyrros, M.D., P.C. ("Zelen Pyrros") (collectively, "defendants"), requested that the Court reconsider the Oral Ruling in light of *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651 (2016), which abrogated the case on which this Court relied in initially denying summary judgment. *See id.* (abrogating *Thurber v. Aetna Life Insurance Company*, 712 F.3d 654 (2d Cir. 2013)). The Court granted the motion for reconsideration. *See Dist. Photo Inc. v. Pyrros*, No. 13-CV-4285(JFB)(SIL), 2016 WL 5407869, at *1 (E.D.N.Y. Sept. 28, 2016).

Defendants now move for attorneys' fees against plaintiff, arguing that they prevailed on the merits and that the factors enunciated in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869 (2d Cir. 1987) favor an award of fees. For the reasons set forth below, the Court, in its discretion, denies the motion in its entirety.

I. BACKGROUND

The Court assumes the parties' familiarity with the facts of this case, which were set forth more fully on the record in the Oral Ruling. (ECF No. 33 ("Ruling Tr.").) The Court reserves recitation of the relevant facts for the discussion below.

On July 30, 2013, plaintiff District Photo Inc. Health Care Plan ("the Plan" or "plaintiff"), brought this action, naming Dr. Pyrros and Zelen Pyrros as defendants, pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), seeking restitution of overpaid benefits in the amount of $140,400, and alleging breach of contract and unjust enrichment. In their

October 18, 2013 Answer, defendants asserted a counterclaim seeking to recover additional funds not paid under settlement agreements with plaintiff.

On July 9, 2014, both plaintiff and defendants filed their respective motions for summary judgment. On December 2, 2015, the Court granted defendants' motion for summary judgment to the extent plaintiff sought to bring state law claims and denied the cross-motions in all other respects. In denying summary judgment with respect to plaintiff's ERISA claim, the Court concluded that the Plan Document's provision reserving the right to recover plan assets paid out by mistake created an equitable right, and then reasoned that, under *Thurber*, 712 F.3d 654, a claim for the return of overpaid benefits constitutes an action appropriate for equitable relief under 29 U.S.C. § 1132(a)(3). (Ruling Tr. at 8–10.) The Court further noted that, under *Thurber*, it was irrelevant that the money had not been separated from general funds or could have been dissipated. (*Id.* at 8–9.) The Court went on to conclude that issues of fact existed as to whether the initial payments to defendants were made in violation of the Plan, given that the parties disputed whether Dr. Pyrros served as a primary or assistant surgeon during the relevant procedure. (*Id.* at 12–14.) As for defendants' argument that plaintiff had settled via the letter agreements (the "Settlement Letters"), the Court reasoned that, under both ERISA and the Plan Document, if the Administrator's payments clearly violated the Plan, "ERISA would trump any agreement with the administrator related to overpayment [and] would preempt any contractual agreement that is plainly contrary to the plan terms." (*Id.* at 16.) Thus, the disputed issue of fact on Dr. Pyrros's role in the surgery precluded summary judgment on the basis of the Settlement Letters. (*Id.* at 17–18.)

The Supreme Court subsequently abrogated *Thurber*. *See Montanile*, 136 S. Ct. at 656 n.2, 658. Defendants then brought a motion for reconsideration, arguing that they were entitled to summary judgment based on the abrogation of *Thurber*. (ECF No. 35-1 at 3–6.) They also argued, *for the first time*, that (1) the alleged overpayment did not create an "equitable lien" based upon additional the language of the Plan Document; and (2) the Settlement Letters did not violate the Plan because the Plan Document's provision regarding "Emergency Care" authorized the alleged overpayments. (*Compare id.* at 9–11 (no equitable lien), 13–15 (payments authorized by "Emergency Care" provision), *with* ECF Nos. 19, 22, 25 (no mention of these arguments).)

By Memorandum and Order dated September 28, 2016 (the "Reconsideration Order"), this Court granted the motion for reconsideration. *See Pyrros*, 2016 WL 5407869, at *1. After concluding that *Montanile* did in fact abrogate *Thurber*, this Court found that plaintiff did not have a claim for equitable relief under *Montanile* because the funds from the settlement payments to defendants were not traceable. *Id.* at *2–3; *see also Montanile*, 136 S. Ct. at 658 ("[A] plaintiff [can] ordinarily enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (*e.g.*, identifiable property like a car). A defendant's expenditure of the entire identifiable fund on nontraceable items (like food or travel) destroys an equitable lien."). The Court further held that the Plan Document does not provide that "excess payments would be subject to an equitable lien" because the "Rights of Recovery section includes no . . . language regarding an equitable lien or constructive trust," even though another section of the Plan did so. *Pyrros*, 2016 WL 5407869, at *4–5. Moreover, the

2

Court found that the alleged overpayment did not violate the Plan Document because, under the Plan Document's Medical Benefit section, emergency care is paid "at the In-Network level of benefits" for out-of-network providers such as defendants, the "In-Network" reimbursement rate for surgery is 90%, and defendants provided emergency care to the beneficiary. *Id.* at *5 (quoting Plan Document and Summary Plan Description, Ex. 1 to Fishman Aff., ECF No. 19-2 ("Plan Document and Summary Plan Description"), at 24.) This entitled them to 90% reimbursement. *Id.* Because they received $325,500 through the Settlement Letters on a bill of $405,000, the Settlement Letters plainly complied with the Plan. *Id.* Finally, the Court pointed out that, under the Plan Document, the "Plan Administrator has the sole and absolute discretion to construe and interpret the provisions and terms of the plan, to resolve any disputes which may arise under the plan and otherwise determine the operation and administration of the plan." *Id.* at *6. (quoting Plan Document and Summary Plan Description at 61). As such, the Court concluded that, "because by the express terms of the Plan Document, the administrator had the sole and absolute discretion to resolve the dispute with Zelen Pyrros, the alleged overpayment [did] not violate the Plan Document." *Id.*[1] For these reasons, the Court granted summary judgment in defendants' favor.

---

[1] The Court also concluded that defendants were entitled to summary judgment on their counterclaim for the balance of the amount due under the Settlement Letters. *See Pyrros*, 2016 WL 5407869, at *6 ("[B]ecause the 'decisions and determinations made by the Plan [are] final and binding upon all parties,' plaintiff failed to abide by those terms by failing to pay defendants the entire amount owed under the Settlement Letters. . . . Thus, Zelen Pyrros is owed an additional $17,966.26 from plaintiff under the Letter Agreements." (quoting Plan Documents and Summary Plan Description at 61)).

Following this Court's decision on defendants' motion for reconsideration, defendants filed the present motion for attorneys' fees on November 1, 2016. (ECF No. 46.) Plaintiff filed an opposition on November 18, 2016 (ECF No. 48), and defendants replied on December 6, 2016. (ECF No. 49.) The Court heard oral argument on January 3, 2017 and requested supplemental briefing. (ECF No. 51.) Defendants filed a supplemental brief on January 11, 2017, plaintiff responded on January 16, 2017, and defendants replied on January 31, 2017. (ECF Nos. 53, 55, 56.) The Court has fully considered the parties' submissions.

## II. Discussion

Defendants argue that the Court should award attorneys' fees because they succeeded on the merits of their summary judgment motion and the *Chambless* factors favor an award of fees. As set forth below, the Court concludes that, although defendants did succeed on the merits, the *Chambless* factors weigh against attorneys' fees here. Therefore, in its discretion, the Court declines to award fees.

### A. Legal Standard

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). ERISA, however, provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Trustees of the N.Y. City Dist. Council of Carpenters v. American Concrete Solutions, Inc.*, No. 13-CV-4714 (RA), 2014 WL 7234596, at *5 (S.D.N.Y. Dec. 18, 2014) (quoting 29 U.S.C. § 1132(g)(1)).

A district court's discretion to award attorneys' fees under ERISA "is not unlimited." *Donachie v. Liberty Life Assur. Co.*, 745 F.3d 41, 46 (2d Cir. 2014) (quoting

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254–55 (2010)). In *Hardt*, the Supreme Court established that a court may only award attorneys' fees to a party who has obtained "some degree of success on the merits." 560 U.S. at 255. A party satisfies this standard "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* (brackets omitted).

Under *Hardt*, the question of success on the merits is the only factor the court is *required* to consider. *See Donachie*, 745 F.3d at 46 ("After *Hardt,* whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion."). *Hardt* made clear, however, that a court may additionally, in its discretion, consider five other factors, *see* 560 U.S. at 249, known in this Circuit as the *Chambless* factors, which are:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Chambless*, 815 F.2d at 872.

B. Application

Here, defendants plainly obtained some success on the merits because they prevailed on summary judgment on substantive grounds. *See Hardt*, 560 U.S. at 255–56 (holding that a party obtained some success on the merits even though she "*failed* to win summary judgment on her benefits claim" (emphasis added)); *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 153–54 (2d Cir. 2013) (holding that a party obtained some success on the merits where district court granted summary judgment on only one of several claims). In its discretion, therefore, the Court moves on to consider the *Chambless* factors.

1. Culpability or Bad Faith

The chief factor the parties dispute is the first factor—the degree of plaintiff's culpability or bad faith. Defendants argue that plaintiff lacked a factual basis for its legal claims, and, therefore, the lawsuit was frivolous. In support of this argument, defendants highlight this Court's findings in the Reconsideration Order that the language of the Plan Document does not create equitable liens for overpayments and, in any event, the alleged overpayment here did not violate the Plan because it was made to compensate defendants for providing emergency care. (*See, e.g.*, ECF No. 46 at 5–6.) Had plaintiff simply read its own document, defendants continue, they would have recognized that they had no claim based on an equitable lien. (*See* ECF No. 49 at 5.) Finally, defendants assert that, based on the documents available to plaintiff when plaintiff filed suit, plaintiff knew, or should have known, that the procedure at issue was for emergency care, thus entitling them to 90% of the "Allowed Benefit" under the Plan Document.[2] (ECF No. 52 at 1–2.)

---

[2] As this Court noted in the Reconsideration Order:

4

The Second Circuit has clarified that "'culpability' and 'bad faith' are distinct standards," and, consequently, a party seeking attorneys' fees "need not prove that the offending party acted in bad faith." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 48 (2d Cir. 2009). A party is "culpable" if its conduct "is blameable; censurable; at fault; involving the breach of a legal duty or the commission of a fault." *Id.* (ellipses omitted). Culpability normally requires something "more than mere negligence." *Demonchaux v. Unitedhealthcare Oxford*, No. 10 CIV. 4491 DAB, 2014 WL 1273772, at *4 (S.D.N.Y. Mar. 27, 2014). For example, courts in the Second Circuit routinely hold that an administrator's arbitrary and capricious denial of a claim is sufficiently culpable to weigh in favor of granting attorneys' fees. *See, e.g.*, *Donachie*, 745 F.3d at 47 (noting that the Second Circuit recognizes that an administrator may be culpable under *Chambless* where his decision was arbitrary and capricious). Likewise, the filing of a frivolous lawsuit may also suggest culpability. *See, e.g.*, *Griffeth v. Sheet Metal Workers' Local Unions & Councils Pension Plan*, 34 F. Supp. 2d 1170, 1173 (D. Ariz. 1998); *Larson v. Univ. Women's Health Pension Plan*, 971 F. Supp. 398, 401 (D. Minn. 1997); *Monkelis v. Mobay Chem.*, 827 F.2d 935, 936 (3d Cir. 1987).

Nevertheless, a party that has raised potentially meritorious claims in good faith will generally not be deemed culpable. *See, e.g.*, *Hanley v. Kodak Ret. Income Plan*, 663 F. Supp. 2d 216, 219 (W.D.N.Y. 2009) ("I find that there is insufficient culpable conduct on plaintiff's part, and that the case was not sufficiently frivolous, to justify an award of attorneys [sic] fees to defendants."); *Aramony v. United Way of Am.*, 28 F. Supp. 2d 147, 175 (S.D.N.Y. 1998) ("In light of UWA's non-frivolous legal arguments, I cannot find that it acted in bad faith or with an unusual degree of culpability."); *aff'd in part, rev'd in part sub nom. Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140 (2d Cir. 1999) (affirming denial of attorneys' fees). For instance, in *Sigmund Cohn Corp. v. District No. 15 Machinists Pension Fund*, 804 F. Supp. 490 (E.D.N.Y. 1992), a contributing employer sought confirmation of an arbitration award against an ERISA pension fund ("Fund"), as well as attorneys' fees, after the arbitrator found that "the Fund lacked authority under the terms of its own documents" to impose withdrawal liability on the employer in the way that it did. *Id.* at 493. The court confirmed the arbitration award, but declined to award attorneys' fees because "the Fund pursued the matter 'in good faith' to comport with the Trustees' fiduciary duty to protect the Fund's assets." *Id.* at 496. The Fund's "interpretation of the Plan's provisions," the court continued, was "neither strained nor untenable." *Id.* As such, "[b]ecause the Fund advanced colorable legal arguments in what is an uncertain area of law, the Court decline[d] to grant [the employer's] fee request." *Id.*; *see also McGuffey v. Brink's, Inc.*, 594 F. Supp. 2d 553, 556 (E.D. Pa.

---

"Allowed Benefit" is defined as "[p]lan allowances for treatment, services or supplies, rendered by an Out-of-Network provider, essential to the care of the individual as determined by the Claims Administrator. Charges by a Licensed Provider must be the amount usually charged for similar services and supplies in the absence of a Plan or insurance. Charges for Covered Services that do not exceed the Allowed Benefit will be reimbursed as specified in the Schedule of Benefits. A fee schedule, approved by NCAS, may be used by the Plan in determining the amount of the Allowed Benefit." (Plan Document and Summary Plan Description at 47.)

*Pyrros*, 2016 WL 5407869, at *5 n.4.

5

2009) (holding that first factor did not weigh in favor of attorneys' fees where the plaintiffs "made reasonable, non-frivolous arguments interpreting [the relevant statute]" that the court rejected and noting that the "mere fact that their position was ultimately unsuccessful [did] not show culpability or bad faith"); *Linck v. Arrow Elecs., Inc.*, No. CIV.A.AW-07-3078, 2010 WL 2473267, at *6 (D. Md. June 14, 2010) ("Linck's defense against LINA's counterclaim, though meritless, did not rise to the level of bad faith or culpability."); *Jackson v. Wilson, Sonsini, Goodrich & Rosati Long Term Disability Plan*, 768 F. Supp. 2d 1015, 1022 (N.D. Cal. 2011) (finding that first factor weighed against attorneys' fees where the plaintiff "pointed to sufficient evidence in the record to show that a reasonable basis existed for her to believe that she could prove her claim" even though the claim was dismissed on summary judgment).

Here, the Court concludes that the legal arguments the Plan offered were not so frivolous as to imply culpability. Instead, like in *Sigmund*, the Plan "pursued the matter 'in good faith' to comport with [its] fiduciary duty to protect [its] assets," and its interpretations of both the Plan Document and the relevant case law were "neither strained nor untenable" when it filed suit. *Sigmund*, 804 F. Supp. at 496.

First, while erroneous, plaintiff's interpretation of the Plan Document as giving rise to an equitable lien in the event of overpayment (*see, e.g.*, ECF No. 38 at 5–6) was not so absurd that plaintiff can be deemed culpable for adopting it. The Plan Document affords plaintiff a right to recover overpayments (*see* Plan Document and Summary Plan Description at 59–60 ("Whenever payments have been made by the Claims Administrator with respect to allowable expenses in excess of the maximum amount of payment necessary to satisfy the intent of this Plan, the Claims Administrator shall have the right to recover such excess payments.")), and, as this Court noted in its Oral Ruling, Second Circuit precedent at the time suggested that "a claim for return of overpaid benefits constitutes [an] action for appropriate equitable relief under Section 1132(a)(3)" (Ruling Tr. at 10 (citing *Thurber*, 712 F.3d at 654)). *See also Thurber*, 712 F.3d at 664 ("[T]he nature of Aetna's claim is equitable: the insurer seeks specific funds (overpayments resulting from Thurber's simultaneous receipt of no-fault insurance benefits and short-term disability benefits) in a specific amount . . . as authorized by the plan."); *cf. Kohl's Dep't Stores v. Castelli*, 961 F. Supp. 2d 415, 421 (E.D.N.Y. 2013) ("[T]he Plaintiff's claim for reimbursement [of paid benefits] qualifies as equitable relief."). Moreover, in another case cited in the Oral Ruling, the Seventh Circuit characterized a provision that closely resembled the provision at issue here as providing equitable relief. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Assocs., P.A.*, 53 F.3d 172, 174 & n.2 (7th Cir. 1995) ("Whenever this Plan has made benefit payments exceeding the amount of benefits payable under the terms of this Plan, the Fund shall have the right to recover the excess payments from any responsible person or entity, including the right to deduct the amount of excess payment from any subsequent payable benefits."). In light of this precedent, it was not unreasonable for plaintiff to interpret the Plan Document as creating an equitable lien.[3]

---

[3] Indeed, on the initial summary judgment motion, both this Court and defendants accepted this reading of the Plan Document without question. It was only at a later stage and upon a much closer reading of both the Plan Document and *Thurber* that defendants offered the alternative construction that this Court ultimately adopted. At oral argument, defense counsel failed to provide a clear explanation as to why

Similarly, plaintiff's interpretation of the Plan Document as authorizing a rate of 20% of the Allowed Benefit for assistant physicians even for emergency services is not so flawed as to suggest culpability. (*See* ECF No. 53-1 ¶ 3.) As a threshold matter, defendants did not even raise the emergency care provision with the Court in its summary judgment motion, but rather raised it for the first time in their motion for reconsideration.[4] Moreover, under plaintiff's reading of the Plan Document, "[w]hen multiple surgeons are involved, reimbursement for all surgeons will not exceed the Allowed Amount for the procedure. More specifically, in the case of Assistant Surgeons . . . the eligible amount for consideration is limited to 20% of the Allowed Amount for the covered procedure." (*Id.*) This is true, according to plaintiff, even for emergency services. (*See id.* at ¶ 5 ("The Plan does not make provisions for any higher payments for emergency surgery.").) Again, although the Court rejected this reading of the Plan, it is not so unreasonable as to weigh in favor of attorneys' fees, given that the relevant provision is silent on whether the Plan's distinction between the rates for primary and assistant physicians applies in the context of emergencies.[5]

In short, plaintiff "advanced colorable legal arguments" regarding the proper interpretation of the Plan Document, and the Court cannot conclude that raising them made plaintiff sufficiently culpable to support an award of fees under the first *Chambless* factor. *Sigmund*, 804 F. Supp. at 496; *see also, e.g.*, *Hanley*, 663 F. Supp. 2d at 219; *Aramony*, 28 F. Supp. 2d at 175. That the Court ultimately rejected these arguments does not alter this conclusion. *See McGuffey*, 594 F. Supp. 2d at 556; *Linck*, 2010 WL 2473267, at *6.

2. Ability to Pay

As to the second factor, although plaintiff does not contest its ability to pay, "its ability to pay generally is neutral in effect." *Alfano v. CIGNA Life Ins. Co. of N.Y.*, No. 07 Civ. 9661, 2009 WL 890626, at *2 (S.D.N.Y. Apr. 2, 2009) (citing *Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375, 383 (2d Cir. 2002)). Thus, this factor does not favor either party. *See Demonchaux*, 2014 WL 1273772, at *5.

3. Deterrence

With respect to the third factor—deterrence of "other persons acting under similar circumstances"—the court concludes that, given the absence of culpability on plaintiff's part, there is no misconduct to deter. On the contrary, this factor actually weighs *against* an award of attorneys' fees because it could deter plans from filing potentially meritorious lawsuits. *See Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000) ("[W]here, as in this case, an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third *Chambless* factor likely is not merely neutral, but weighs strongly *against* granting fees to the prevailing defendant. Awarding fees in such a case would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they would be sad-

---

defendants are arguing plaintiff's culpability where defendants did not even make this argument in the summary judgment motion.

[4] Again, defense counsel failed to provide an adequate explanation for why defendants failed to even raise this issue in the original summary judgment motion.

[5] The provision vesting the Plan Administrator with "complete discretion in setting the Allowed Benefit, which it exercised in agreeing to pay the amounts set forth in the Settlement Letters," likewise, does not imply culpability. *Pyrros*, 2016 WL 5407869, at *6. It was reasonable for plaintiff to believe that, even with this discretion, the Administrator could not set an Allowed Benefit that manifestly violated the terms of the Plan Document.

dled with their adversary's fees in addition to their own in the event that they failed to prevail; this, in turn, would undermine ERISA's essential remedial purpose of protecting beneficiaries of pension plans."); *Mahoney v. J.J. Weiser & Co.*, 646 F. Supp. 2d 582, 586 (S.D.N.Y. 2009) ("Concerning the need for deterrence reflected in the third factor, the Court agrees that given ERISA's policy of protecting plan beneficiaries, colorable claims pursued in good faith, even if ultimately unsuccessful, should not be discouraged by awards of attorney's fees to prevailing defendants."), *aff'd sub nom. Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108 (2d Cir. 2011).

### 4. Common Benefit

As defendants concede (*see* ECF No. 46 at 11), this case does not satisfy the fourth factor by producing some common benefit or resolving a significant legal question concerning ERISA, and, therefore, this factor is neutral. *See Mahoney*, 646 F. Supp. 2d at 594 ("[T]he [fourth] *Chambless* factor, whether the action conferred a common benefit on a group of plan participants, is generally regarded as either inapplicable or neutral where an ERISA defendant is seeking attorney's fees.").

### 5. Relative Merits of the Parties' Positions

Finally, the relative merits of the parties' positions do not favor an award of fees because, as discussed above, plaintiff's arguments were not unreasonable even though the Court ultimately agreed with defendants. *See id.* ("As regards the [fifth] factor, the relative merits of the parties' positions, though Defendants' arguments prevailed, Plaintiffs' losing claims should be considered in the context of the absence of culpability or bad faith as determined in assessing the first factor. In this light, the Court finds that Plaintiffs' position cannot be considered so substantially devoid of merit as to tip the *Chambless* factors dispositively in Defendants' favor on this basis alone." (citation omitted)); *DeFelice v. Am. Int'l Life Assur. Co. of N.Y.*, No. 94 CIV. 8165 (AGS), 1996 WL 304542, at *2 (S.D.N.Y. June 5, 1996) ("The relative merits of the parties' positions also does not support an award of attorney's fees. Notwithstanding the fact that the jury ultimately found for Mrs. DeFelice, American International's position had merit and certainly could not be considered frivolous.").

\* \* \*

In short, the Court concludes that the *Chambless* factors weigh against an award of attorneys' fees, especially in light of plaintiff's minimal culpability and the possible chilling effect an award would have on potentially meritorious lawsuits brought to protect beneficiaries' interests. Accordingly, the Court, in its discretion, declines to award attorneys' fees. *See LaBarbera v. J.E.T. Res., Inc.*, 396 F. Supp. 2d 346, 349–50 (E.D.N.Y. 2005) ("Under ERISA, an award of attorneys' fees and costs is within the sound discretion of the trial court."). Other courts, in analogous circumstances, have reached the same conclusion. *See, e.g.*, *Salovaara v. Eckert*, 222 F.3d at 28; *Toussaint*, 648 F.3d at 111; *United Union of Roofers, Waterproofers, & Allied Workers, Local No. 210, AFL-CIO v. A.W. Farrell & Son, Inc.*, No. 07-CV-224-HKS, 2013 WL 140101, at *4–5 (W.D.N.Y. Jan. 10, 2013); *Owen v. Wade Lupe Const. Co.*, 325 F. Supp. 2d 146, 156 (N.D.N.Y. 2004); *Alliant Techsystems, Inc. v. Marks*, No. CIV.04-3539 JRT/FLN, 2008 WL 4151812, at *2–4 (D. Minn. Sept. 4, 2008).

### III. CONCLUSION

For the reasons set forth above, the Court, in its discretion, denies defendants' motion for attorneys' fees in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 30, 2016
　　　Central Islip, NY

\*\*\*

Plaintiff is represented by Alyse B. Heilpern and Gloria B. Cherry of Braff, Harris & Sukoneck, 305 Broadway, 7th Floor, New York, NY 10028. Defendants are represented by Mark I. Fishman and Simon I. Allentuch of Neubert, Pepe & Monteith, P.C., 195 Church Street, 13th Floor, New Haven, CT 06510.